**E-FILED**
Monday, 07 January, 2013  03:06:45 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

SIDNEY COLLINS,                          )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )        11-CV-3086
                                         )
DR. HUGHES LOCHARD, et al.,              )
                                         )
                                         )
        Defendants.                      )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and detained in the Rushville Treatment and Detention Center, pursues claims for deliberate indifference to his serious medical needs.  Defendants move for summary judgment.

For the reasons below, the Court concludes that no rational juror could find that Dr. Lochard, Plaintiff's treating physician, was deliberately indifferent to any of Plaintiff's serious medical needs.  Accordingly, summary judgment must be granted to Dr. Lochard.

Consequently summary judgment must be granted to the other

Defendants, who allegedly failed to remedy Dr. Lochard's deliberate

indifference.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   A

movant may demonstrate the absence of a material dispute through

specific cites to admissible evidence, or by showing that the nonmovant

"cannot produce admissible evidence to support the [material]  fact."

Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant

may not simply rest on his or her allegations in the complaint, but

instead must point to admissible evidence in the record to show that a

genuine dispute exists.  Id.; Harvey v. Town of Merrillville, 649 F.3d 526,

529 (7th Cir. 2011).  "In a § 1983 case, the plaintiff bears the burden of

proof on the constitutional deprivation that underlies the claim, and thus

must come forward with sufficient evidence to create genuine issues of

material fact to avoid summary judgment." <u>McAllister v. Price</u>, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. <u>Id.</u>

## FACTS

In January of 2010, Plaintiff, now 65 years old, was transferred from Dixon Correctional Center to the Rushille Treatment and Detention Center ("Rushville") pursuant to the Illinois Sexually Violent Persons Act. Dr. Lochard saw Plaintiff at the end of that month for an intake exam, noting Plaintiff's prior medical history of sinus surgery; a colonoscopy; complaints of back, hip and muscle cramping; and a 2009 referral to an optometrist. Plaintiff's 2009 medical records from the Illinois Department of Corrections reflect a problem with retinal detachment in 2009 for which Plaintiff was treated in 2009.

On January 28, 2010, Plaintiff received an EKG which showed a "borderline first degree A-V block."  Plaintiff is currently taking cholesterol-lowering medication.  According to Dr. Lochard, "[a] finding of a borderline first degree A-V block is not a finding that requires any specific medical treatment.  Proper procedure is to monitor and observe patients while informing them of the benefits of healthy living, . . . ." (Dr. Lochard Aff. ¶ 6).  Plaintiff asserts that he did not learn about these results until he received a copy of his medical records and that Dr. Lochard told Plaintiff that a first degree A-V block was a serious problem. However, this is hearsay, and, in any event, Dr. Lochard's alleged statement that a first degree A-V block is serious does not suggest that Plaintiff's degree A-V block needs any other treatment than what Dr. Lochard provided.  The statement might be considered as an admission against a party opponent, but it is still not evidence that Dr. Lochard's treatment approach is outside the standard of care.

Plaintiff was initially assigned a low bunk at Rushville.  According to Plaintiff, he had been assigned to a low bunk in the IDOC for years

due to his age and various injuries.

On February 9, 2010, Dr. Lochard saw Plaintiff for complaints of "floaters" in Plaintiff's right eye and Plaintiff's request for a low bunk permit.  Dr. Lochard referred Plaintiff to an optometrist, who diagnosed Plaintiff with posterior vitreous detachment.  According to Dr. Lochard, posterior vitreous detachment "is a separation of the vitreous humour from the retina.  PVD is a natural change that can occur in the eye as a patient ages, and is a common cause of 'eye floaters.'" Plaintiff argues that Dr. Lochard lacks the expertise to explain this condition, but Dr. Lochard's explanation is based on his training and experience as a physician.  In any event, it is undisputed that Dr. Lochard relied on the optometrist, Dr. Carter, to diagnose Plaintiff's eye problem. Plaintiff does not dispute that Dr. Lochard followed all the recommendations of the optometrist.

On April 20, 2010, Dr. Lochard saw Plaintiff for complaints of blood in his stool.  Dr. Lochard referred Plaintiff to a gastrointestinal specialist, prescribed Prilosec, and ordered a CBC.  Plaintiff received a

colonoscopy in July, 2010 in which a small, benign polyp was removed.

Plaintiff was referred to see a podiatrist in August, 2010 for complaints of foot pain.  The podiatrist diagnosed flat feet and ordered arch supports.

Plaintiff saw the optometrist again in September, 2010 for complaints of eye pain.  The optometrist diagnosed Plaintiff with dry eye and surmised that Plaintiff's eye pain was being caused by a sinus infection.  The optometrist prescribed Plaintiff Doxycycline, an antibiotic, and instructed Plaintiff to avoid prolonged sun exposure.

Also in September, 2010, Dr. Lochard saw Plaintiff for complaints of hip and foot pain.   According to Plaintiff, these pains were nothing new, as they had been caused by injuries years before his detention in Rushville.  Plaintiff reported to Dr. Lochard that the pain was exacerbated after Plaintiff played basketball.  Dr. Lochard noted that Plaintiff's ankle had a full range of motion and that a prior x-ray from Dixon Correctional Center showed no fracture or other abnormalities. Dr. Lochard prescribed Tylenol and instructed Plaintiff to monitor his

physical activity.

In December, 2010, Dr. Lochard saw Plaintiff for complaints of dizziness and nose bleeds.  Dr. Lochard prescribed Bactrim, an antibiotic, which is commonly prescribed to combat ear infections that may cause dizziness.  Plaintiff maintains that the Bactrim exacerbated his dizziness, but no evidence suggests that Dr. Lochard was aware of this.

Plaintiff saw the podiatrist again in January, 2011, for continued foot pain.  The podiatrist instructed Plaintiff on the proper form for running, ordered new arch supports, and referred Plaintiff for physical therapy.

On February 4, 2011, Plaintiff was directed to move to the top bunk, because another resident was moving into Plaintiff's room and needed the low bunk for medical reasons.  Plaintiff had been under the impression that he, too, had a low bunk permit for medical reasons, but none had been issued.  Plaintiff objected to the top bunk assignment because he did not believe that he would be able to climb up and down from the bunk safely, or sleep on the top bunk safely, in light of his age,

reported dizziness, pain, and injuries.

Dr. Lochard disagreed with Plaintiff's assessment.  In Dr. Lochard's opinion, Plaintiff had no medical condition at the time which counseled against Plaintiff's assignment to the top bunk.  Dr. Lochard based his conclusion on Plaintiff's high level of physical activity, which included jogging, participation in a 5k, and playing basketball.  Accordingly, Dr. Lochard declined to issue a medical order for a low bunk, instead instructing Plaintiff to take the issue up with the rooming committee. Plaintiff felt he had no choice but to sleep on his mattress on the floor, close to the toilet, which he did for over five months.

In addition to Plaintiff's long bunk request, Dr. Lochard saw Plaintiff on February, 8, 2011, for complaints of right hip and foot pain, exacerbated after Plaintiff had played sports the day before.  Dr. Lochard ordered Motrin and x-rays of Plaintiff's hip, foot, and ankle.

Dr. Lochard saw Plaintiff again on February 28, 2011, again for complaints of pain experienced after Plaintiff had played basketball the day before.  Plaintiff had not yet received the x-rays ordered by Dr.

Lochard.  Dr. Lochard determined that Plaintiff had hip tenderness and a good range of motion.  Dr. Lochard prescribed Neurontin.

The x-rays ordered by Dr. Lochard showed no fractures but did show minimal degenerative changes in Plaintiff's right ankle and hip, which Dr. Lochard attributed to Plaintiff's age.  The x-ray of Plaintiff's foot suggested planus deformity (flat foot), which had already been diagnosed by the podiatrist.  Nothing in the x-rays changed Dr. Lochard's opinion that Plaintiff had no medical reason for a low bunk.

Dr. Lochard saw Plaintiff in June, 2011 for continued pain in Plaintiff's hips, back, and foot.  Dr. Lochard noted tenderness in Plaintiff's lower back but also noted that Plaintiff's straight leg raise test was normal and that Plaintiff had no tenderness in his hips at 90 degrees. Dr. Lochard prescribed Motrin and instructed Plaintiff to continue with low back stretches.

Plaintiff filed this case in March 2012.  At some point thereafter, Dr. Lochard referred Plaintiff to a specialist for Plaintiff's complaints of arm pain.  The specialist diagnosed Plaintiff with carpal tunnel syndrome.

After receiving that diagnosis, Dr. Lochard ordered Plaintiff a medical low bunk permit.  Plaintiff has since received carpal tunnel surgery on one of his hands.  Dr. Lochard avers that, "it is my opinion, based upon my education and training as a physician, and my evaluations of Mr. Collins, that prior to his diagnosis of carpal tunnel syndrome, he was physically able to climb onto and use the top bunk ..."

Throughout the relevant time and continuing, Plaintiff has been able to jog, play basketball and exercise "as his body allows."  However, Plaintiff does experience stiffness and pain after inactivity, for example after a night's sleep or sitting for a period.  Plaintiff's pain lessens when he is moving around; he feels better after warming up his muscles.

## ANALYSIS

Plaintiff's claim is governed by the Fourteenth Amendment, not the Eighth Amendment, but there is no practical difference between the legal standards on a claim for lack of medical care. Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 301 n.2 (7th Cir. 2010); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).  Plaintiff must point to

evidence that would allow a rational juror to find that Dr. Lochard was deliberately indifferent to a serious medical need.

Dr. Lochard's argument focuses on the subjective prong, deliberate indifference.  Deliberate indifference does not encompass negligence or even gross negligence.  McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010).  Deliberate indifference requires personal knowledge of a serious medical need and an intentional or reckless disregard of that need.  Id.; Hayes v. Snyder, 546 F.3d 516, 524 (7th Cir. 2008).  A defendant acts with deliberate indifference if he personally knows about the serious medical need, has the authority and opportunity to do something about it, and consciously disregards the problem. Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 301 (7th Cir. 2010)("The official must have subjective knowledge of the risk to the inmate's health and also must disregard that risk.").

Starting with the low bunk claim, Plaintiff argues that Dr. Lochard failed to consider the totality of Plaintiff's condition, instead focusing exclusively on Plaintiff's ability to jog and play basketball.  Plaintiff

contends that his stiffness and pain, eye problems, and dizziness dictated that he should have had a low bunk.

Plaintiff points to no evidence that he had a serious and continuing problem with dizziness or that Dr. Lochard was aware of such a problem. Plaintiff complained in December, 2010 of dizziness and received Bactrim, but Plaintiff points to no other complaints he made of dizziness, either in the medical records or through health care requests.  His health care requests challenging his top bunk assignment all focus on his hip, foot, and back problems, not dizziness.  Similarly, Plaintiff points to no evidence, other than his own deposition testimony, that he was diagnosed in 1994 with bulging discs, that Dr. Lochard knew of this diagnosis, or that such a diagnosis meant that Plaintiff should not be assigned to the top bunk.

Additionally, Plaintiff has no evidence to substantiate his allegation that he has a serious eye problem.  The optometrist did not diagnose any serious problem, and Dr. Lochard is entitled to rely on the diagnosis and recommendations of the optometrist.

As for Plaintiff's hip and foot, Dr. Lochard was aware of these complaints but was still of the opinion that, based Plaintiff's high level of physical activity and Dr. Lochard's own examinations of Plaintiff, Plaintiff was still physically able to climb up and down from the bunk. Plaintiff points to no evidence that Dr. Lochard's conclusion was a "'a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011)(*quoting* Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2009). Dr. Lochard is "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." Sain, 512 F.3d at 894-95.

On this record no rational juror could conclude that Dr. Lochard was deliberately indifferent when he refused to prescribe a low bunk permit to Plaintiff. Dr. Lochard did order a low bunk after Plaintiff was diagnosed with carpal tunnel, but Plaintiff offers no evidence that Dr. Lochard was aware of Plaintiff's carpal tunnel before the specialist's

13

diagnosis.

As to the treatment of Plaintiff's complaints of pain, Plaintiff argues that Dr. Lochard's deliberate indifference can be inferred from the fact that Plaintiff still has all the problems about which he has been complaining since he arrived at Rushville.  It is true that a doctor's dogged persistence in prescribing ineffective treatment which results in prolonged and unnecessary suffering violates constitutional standards. Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005).  But Dr. Lochard has not been deliberately indifferent to Plaintiff's pain.  Dr. Lochard prescribed pain medicine, sent Plaintiff to an optometrist and podiatrist (who ordered physical therapy and arches), and instructed Plaintiff on back stretching exercises.  In Dr. Lochard's opinion, Plaintiff's pain is explained by the mild degenerative changes caused by Plaintiff's age.

Plaintiff asserts that he needs an MRI or some other diagnostic test more sensitive than an x-ray, but he offers no evidence that Dr. Lochard's approach to diagnosis and treatment is outside the standard of care. Plaintiff feels he is being punished for exercising, but a patient's ability to

exercise is a relevant consideration for diagnosis and treatment.  Plaintiff also contends that for months no one told him about Dr. Lochard's prescription for Motrin, but no evidence suggests that Dr. Lochard was aware of any failure to dispense the Motrin to Plaintiff.

As to Plaintiff's claim about his EKG result, Plaintiff offers no evidence to counter Dr. Lochard's conclusion that Plaintiff's first degree A-V block needs nothing other than monitoring and healthy living.  The Court notes that the EKG result also states "[e]xtensive ST-T changes may be due to myocardial ischemia," but the parties do not address this issue, nor did the Plaintiff raise this in his Complaint.  Plaintiff testified in his deposition that he continues to have abnormal EKG's, but this claim is not developed.  The only claim before the Court is whether Dr. Lochard was deliberately indifferent to the results of the EKG test dated 1/29/10.  No evidence suggests that he was.  The Court offers no opinion on a possible claim regarding EKG tests done at a later date.

In sum, on this record no rational juror could find that Dr. Lochard was deliberately indifferent to any of Plaintiff's serious medical needs.

Dr. Lochard exercised his professional judgment in response to each of Plaintiff's complaints, sent Plaintiff to outside specialists, and followed those specialists' recommendations.  Summary judgment must be granted to Dr. Lochard and, necessarily, to the other Defendants who allegedly failed to override Dr. Lochard's decisions.

IT IS THEREFORE ORDERED:

1) Defendants' motions for summary judgment are granted (d/e's 55, 59).  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot, and this case is terminated, with the parties to bear their own costs.  All deadlines and settings on the Court's calendar are vacated.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis should identify the issues Plaintiff will present on appeal.  See Fed. R. App. P. 24(a)(1)(c).

ENTERED:       January 7, 2013

FOR THE COURT:


       s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE